IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MICHAEL DAVID MCCALL, § <br> #57215-177, § <br> MOVANT, § <br> § <br> v. § <br> § <br> UNITED STATES OF AMERICA, § <br> RESPONDENT. § | § <br> § CIVIL CASE NO. 3:22-CV-1656-M-BK <br> § (CRIMINAL CASE NO. 3:18-CR-240-M-1) |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, Movant Michael McCall's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 was referred to the undersigned United States magistrate judge for case management, including the issuance of findings and a recommended disposition where appropriate. As detailed here, the motion should be **DENIED**.

**I. BACKGROUND**

In 2018, McCall pled guilty to a one-count indictment charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Crim. Doc. 25.[1] As noted in his Factual Resume and reiterated at rearraignment, McCall understood there was a potential enhancement under the Armed Career Criminal Act (ACCA) based on his prior Texas burglary convictions. Crim. Doc. 19 at 2[2]; Crim. Doc. 47 at 13. At sentencing, however, the Court found the ACCA did not apply because of then-binding precedent in *United States v.*

---

[1] All "Crim. Doc." citations refer to the related criminal case, *United States v. McCall*, No. 3:18-CR-240-M (N.D. Tex.).

[2] An amended Factual Resume was filed to correct a typographical error as noted at re-arraignment. Doc. 26; Crim. Doc. 47 at 15-18.

*Herrold*, 883 F.3d 517 (5th Cir. 2018) (en banc) (*Herrold I*). Crim. Doc. 48 at 4-5. The Court thus sentenced McCall to 37 months' imprisonment. Crim. Doc. 40. The government appealed.

Meanwhile, based on intervening Supreme Court precedent in *Quarles v. United States*, 139 S. Ct. 1872 (2019), the Supreme Court granted the petition for writ of certiorari in *Herrold I*, vacating the judgment of the appellate court and remanding the case for further proceedings. *United States v. Herrold*, 139 S. Ct. 2712 (2019). On remand, the Court of Appeals for the Fifth Circuit reversed its decision in *Herrold I* and found that the Texas burglary statute qualifies as generic burglary and, thus, qualifies as an ACCA predicate offense. *United States v. Herrold*, 941 F.3d 173 (5th Cir. 2019) (en banc) (*Herrold II*).

The Fifth Circuit also later vacated McCall's judgment and remanded for resentencing relying on *Herrold II*. Crim. Doc. 50. On September 16, 2020, this Court found the ACCA applied to McCall and resentenced him to 15 years—the statutory minimum under the ACCA. Crim. Doc. 63. The Fifth Circuit subsequently affirmed the new sentence on direct appeal. *United States v. McCall*, 840 F. App'x 791 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 597 (2021).

In July 2022, McCall filed this timely § 2255 motion with brief in support. Doc. 2; Doc. 3. He asserts that his plea was involuntary because of ineffective assistance of counsel. Doc. 2 at 4. The Government opposes § 2255 relief, Doc. 10, and McCall has filed a reply, Doc. 11.

Upon review, the Court concludes that McCall's plea was voluntary, and that he fails to establish ineffective assistance of counsel. His § 2255 motion should thus be denied.

## II. ANALYSIS

### A. Applicable Law

To be constitutionally valid, a guilty plea must be knowingly, voluntarily, and intelligently made. *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000). "The

Constitution requires that a defendant be advised and understand the consequences of a guilty plea." *United States v. Rivera*, 898 F.2d 442, 447 (5th Cir. 1990). *See also Boykin v. Alabama*, 395 U.S. 238, 244 (1969) (to be knowing and intelligent, the defendant must have "a full understanding of what the plea connotes and of its consequence"). "'The consequences of a guilty plea, with respect to sentencing, mean only that the defendant must know the maximum prison term and fine for the offense charged.'" *Rivera*, 898 F.2d at 447 (citations omitted). Stated another way, as long as a defendant understands "'the length of time he might possibly receive, he was fully aware of his plea's consequences.'" *Id.* (citations omitted).

Further, when challenging the validity of his guilty plea, a defendant ordinarily may not refute his sworn testimony given at the plea hearing while under oath. *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998). A defendant must also overcome the presumption of regularity and "great evidentiary weight" accorded court records. *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (holding a signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether a plea is entered voluntarily and knowingly).

To succeed on an ineffective-assistance-of-counsel claim, the movant must also demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Failure to establish either deficient performance or prejudice defeats the claim. *Id.* at 697.

To prove the deficient-performance prong of the *Strickland* test, the movant must show that counsel made errors so serious that he or she was not functioning as the counsel guaranteed by the Sixth Amendment. *Id*. at 687. The proper measure of attorney performance is

reasonableness under prevailing professional norms. *Id*. at 688. That said, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.*

Moreover, to prove prejudice, the movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. To demonstrate prejudice in the context of a guilty plea, the movant must show that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The movant bears the burden of proving that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

### B. Validity of plea claim is procedurally defaulted.

McCall challenges the voluntariness of his guilty plea. Having failed to raise the claim on direct appeal, the Court agrees with the Government that it is procedurally defaulted, absent a showing of cause and prejudice or that the movant is "actually innocent" of the crime for which he was convicted. *See United States v. Logan*, 135 F.3d 353, 355 (5th Cir. 1998) (citing *United States v. Frady*, 456 U.S. 152, 168 (1982)); *see also Bousley v. United States,* 523 U.S. 614, 621 (1998) ("[V]oluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review.").

McCall does not satisfy the cause-and-actual-prejudice exception to excuse his failure to raise the validity of his plea on direct appeal. While he asserts that trial counsel's ineffective assistance rendered his plea involuntary, he does not challenge his appellate counsel's failure to present the issue on appeal. And even assuming that cause exists to excuse the procedural

default, McCall does not demonstrate that he will suffer actual prejudice because he fails to establish a meritorious claim as discussed *below*.  He also does not assert his actual innocence.[3]

### C. McCall's ineffective assistance claims are unsupported.

McCall argues that his guilty plea was involuntary because counsel grossly misadvised him about his sentencing exposure in deciding whether to plead guilty.  Doc. 3 at 2, 7.  He asserts that counsel "assured [him] that he would receive a sentence of between 30 and 37 months," and that he "was NOT eligible for sentencing under the [ACCA]."  Doc. 3 at 2, 7; *see also* Movant's Decl., Doc. 7 at 2.  As a result, McCall states that he "understood that his plea absolutely limited his sentence exposure to no more than ten (10) years' imprisonment."  Doc. 3 at 2.  *See also* Doc. 7 at 2.

McCall also contends counsel was "deficient for failing to warn him of the reality that precedent was in flux and there was a very real likelihood that he would be eligible for sentencing under the ACCA . . . if he pleaded guilty."  Doc. 3 at 8.  McCall thus concludes that he would not have pleaded guilty and would have insisted on going to trial.  Doc. 3 at 2; Doc. 7 at 2-3 ("Had I been accurately advised of the true range of imprisonment I faced based on the guilty plea [counsel] recommended I enter, a mandatory minimum sentence of 15 years' imprisonment, up to a statutory maximum of Life, I would not have pleaded guilty and would have exercised my right to trial by jury.").

McCall's sworn statements at rearraignment, however, contradict his current assertions that his plea was induced by misinformation about his sentencing exposure.  McCall confirmed

---

[3] In his reply, McCall wrongly maintains that the government argues that his ineffective-assistance claim is procedurally barred.  Doc. 3 at 3-4.

under oath his understanding that by pleading guilty he would be subject to *both* (1) a maximum prison term of 10 years *and* (2) a *potential* imprisonment of not less than 15 years and a maximum of life if the court finds at sentencing that he should be sentenced under the ACCA. Crim. Doc. 47 at 13-14. McCall assured the Court that no one had given him "any promise" or "any assurance of any kind" to get him to plead guilty. Crim. Doc. 47 at 13. Further, the Court thoroughly cautioned McCall that he could not rely on counsel's statements about the application of the advisory Sentencing Guidelines, since only the Court could determine the guideline range after considering the Presentence Report ("PSR") and any objections. Crim. Doc. 47 at 9-10. McCall admitted that he understood that the Court could impose a sentence more severe than his advisory guideline range, and that, if that happened, he would not be permitted to withdraw his guilty plea. Crim. Doc. 47 at 14.

By his Factual Resume—which he likewise confirmed under oath that he signed only after reading it carefully and discussing it with his counsel—McCall affirmed his knowledge of both the maximum penalty that he faced *and* the *potential* ACCA enhancement. Crim. Doc. 47 at 15; Doc. 19 at 1-2. He also confirmed his understanding that (1) the Court would determine the sentence after considering the advisory Sentencing Guidelines, (2) no one, including his counsel, could guarantee what the punishment will be, and (3) the Court, in its discretion, could sentence him up to the statutory maximum penalty. Crim. Doc. 47 at 13-14; Crim. Doc. 19 at 1-3. McCall also stated that he was satisfied with his counsel's advice and representation. Crim. Doc. 47 at 7; Crim. Doc. 19 at 4.

Notwithstanding his sworn statements, McCall now contends that counsel was "deficient for failing to warn him of the reality that precedent was in flux and there was a very real

likelihood that he would be eligible for sentencing under the ACCA . . . if he pleaded guilty." Doc. 3 at 8. He offers nothing to support his claim but his self-serving, *post-hoc* allegations, which are insufficient. *Lee v. United States*, 582 U.S. 357, 369 (2017). McCall's affidavit is also silent about counsel's alleged failure to warn him that the law was not settled. Doc. 7.

Further, as the record confirms, ACCA precedent was unsettled in mid-2018 when McCall was indicted and pled guilty. In April 2018, shortly before his indictment, the government had petitioned for writ of certiorari from the *Herrold I* decision, maintaining it was wrongly decided. *United States v. Herrold*, Nos. 17-1445 (filed Apr. 28, 2018). The Supreme Court had also granted the government's petition for writ of certiorari in two other burglary cases involving the same issues. *See United States v. Stitt*, 138 S. Ct. 1592 (Apr. 23, 2018); *United States v. Sims*, 138 S. Ct. 1592 (Apr. 23, 2018). Further, in McCall's case, the government reiterated its opposition to *Herrold I* and a non-ACCA sentence in its objections to the PSR in October 2018 and again in December 2018. Crim. Doc. 31; Crim. Doc. 37.[4]

At sentencing, the Court repeated the government's standing objection to a non-ACCA sentence but applied the then-controlling precedent of *Herrold I*. Crim. Doc. 48 at 4-5 ("The Government, so that it is clear, continues to object that *Herrold* is wrong; the Solicitor General is seeking review by the Supreme Court. The Government will object. It does object to the Court not applying the Armed Career Criminal enhancement, but the Court will make those adjustments and will apply *Herrold*."). McCall confirmed reviewing the PSR documents, Crim. Doc. 48 at 3, and otherwise, said nothing about the alleged involuntariness of his plea or his

---

[4] Until the *Herrold II* decision in October 2019, it remained uncertain whether the Texas burglary statute was generic, and so whether McCall's prior Texas burglary convictions could someday count as predicate offenses for enhancement under the ACCA.

counsel's allegedly inadequate guidance about his sentencing exposure. Crim. Doc. 48 at 16-18.

Additionally, McCall had ample time—nearly nine months—between the Fifth Circuit's December 2019 decision to remand after *Herrold II* and his September 2020 resentencing—to advise the Court that he was dissatisfied with defense counsel's conduct and purported misleading statements about his sentencing exposure. However, he failed to do so. Similarly at his resentencing, McCall voiced no objection about the voluntariness of his guilty plea or his counsel's advice and allegedly deficient performance. Crim. Doc. 65. Instead, he only requested that the Court wait until after the Supreme Court had decided the petition for writ of certiorari in *Harrold II*. Crim. Doc. 69 at 7-8, 13. These circumstances strongly suggest McCall's § 2255 claims are driven by "buyer's remorse" rather than any defect in the guilty plea procedure.

Based on this record, McCall's self-serving assertions that his guilty plea was involuntary and that counsel misadvised him about his sentencing exposure are contradicted by his attestations in the Factual Resume and under oath at the rearraignment. McCall's suggestion of surprise at his ultimate, 15-year ACCA sentence is clearly disingenuous under the facts. Again, he was directly informed by his Factual Resume and during the re-arraignment colloquy of the potential ACCA enhancement. *See Rivera*, 898 F.2d at 447.

Further, if McCall faults his counsel for failing to accurately predict the outcome of *Quarles* and *Herrold II*—that is, to anticipate a change in the law—his claim lacks merit. To be sure, "there is no general duty on the part of defense counsel to anticipate changes in the law." *United States v. Fields*, 565 F.3d 290, 294 (5th Cir. 2009). "Clairvoyance is not a required attribute of effective representation." *Cooks v. United States*, 461 F.2d 530, 532 (5th Cir. 1972).

For the foregoing reasons, McCall fails to demonstrate that his attorney's performance was deficient.

McCall has also failed to demonstrate prejudice: that but for his counsel's allegedly erroneous advice, he would not have pleaded guilty and would have insisted on going to trial. *See Hill*, 474 U.S. at 59. He again presents only self-serving, *post hoc* assertions—not "contemporaneous evidence"—that he would not have pled guilty and would have gone to trial but for counsel's supposed explanations about his sentencing exposure. McCall's assertions now are belied by the record, and are simply insufficient to contradict his sworn testimony at rearraignment. *Lee v. United States*, 582 U.S. 357, 369 (2017) ("Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences."); *United States v. Crain*, 877 F.3d 637, 650 (5th Cir. 2017) (explaining that "self-serving post hoc assertions about how [the defendant] would have pled" do not negate the contemporaneous comments at the plea hearing).

Sworn statements made in open court are entitled to a strong presumption of truthfulness. *United States v. Lampazianie*, 251 F.3d 519, 524 (5th Cir. 2001) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Consequently, a defendant will not be permitted to contradict testimony given under oath at arraignment and sentencing. *See United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (requiring movant to produce "independent indicia of the likely merit of [his] allegations" to overcome re-arraignment testimony and plea agreement, which refuted his allegations); *United States v. Guzman*, No. 19-10783, 2021 WL 2610124, at *3 (5th Cir. Oct. 6, 2021) (rejecting *post hoc* claim the defendant would have proceeded to trial but for counsel's

alleged errors based on defendant's sworn statements at re-arraignment and sentencing).

In sum, McCall fails to demonstrate that (1) his guilty plea was unknowing and involuntary and (2) his counsel rendered deficient performance and that he was prejudiced as a result of the same. McCall's claims therefore fail.

### III. EVIDENTIARY HEARING

In his reply, McCall requests an evidentiary hearing to develop and resolve his claims. Doc. 11 at 1, 6-9. But "[w]hen the files and records of a case make manifest the lack of merit of a Section 2255 [motion], the trial court is not required to hold an evidentiary hearing." *United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. 1981); *see also United States v. Reed*, 719 F.3d 369, 373-74 (5th Cir. 2013) ("A defendant is entitled to an evidentiary hearing on his § 2255 motion only if he presents 'independent indicia of the likely merit of [his] allegations.'" (quoting *United States v. Cavitt*, 550 F.3d 430, 442 (5th Cir. 2008))). Because McCall's claims lack merit for reasons supported by the record, as previously noted, no evidentiary hearing is necessary.

### IV. CONCLUSION

McCall's § 2255 motion should be **DENIED**, and this case should be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED** on November 21, 2023.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).